2003-NMCA-098

75 P.3d 816

The CITY of SUNLAND PARK, Santa Teresa Services Company, Inc., Charles Crowder, Bernard R. Given, Chapter 7 Trustee of the Bankruptcy Estate of Phyllis Crowder, and Gerald A. Strauss, Petitioners–Appellees,

v.

Fernando MACIAS, Doña Ana County Manager and the Board of County Commissioners of Doña Ana County, Defendants–Appellants.

No. 21,314.

Court of Appeals of New Mexico.

April 25, 2003.

Certiorari Denied, No. 28,111, Aug. 7, 2003.

Christopher P. Bauman, Mark C. Dow, Molly B. McIntosh, Bauman, Dow, McIntosh & Leon, P.C. Albuquerque, NM, for Appellees.

Thomas R. Figart, Las Cruces, NM, for Appellants.

## OPINION

BUSTAMANTE, Judge.

{1} In the continuing litigation over utilities and water rights between Doña Ana County (the County), and the City of Sunland Park (the City), the City appeals the dismissal of its petition for injunctive and declaratory relief. The district court did not reach the substantive issues argued by the parties, but instead dismissed the petition under Rule 1–012(B)(6) NMRA 2003, on the grounds of collateral estoppel and ripeness. On appeal, the City concedes that only the following issues remain to be decided: (1) whether the City was collaterally estopped from raising the issue that a clause in the County's revenue bond ordinance violated the New Mexico Antitrust Act, NMSA 1978, §§ 57–1–1 to 57–1–19 (1979 as amended through 1987) (the Antitrust Act); and (2) whether this issue was ripe for review. We hold that the issue was not barred by collateral estoppel and was ripe for review. We also hold that the clause violates the Antitrust Act. We therefore reverse and remand for the district court to vacate its order dismissing the petition and to enter an order severing the clause in question.

## FACTUAL AND PROCEDURAL BACKGROUND

{2} In a separate case, *Board of County Commissioners of Doña Ana County v. Bankruptcy Estate of Phyllis Crowder,* CV 98–1326, the County filed a petition for condemnation of a well. (Because of disqualifications of judges in the Third Judicial District, Judge John W. Pope from the Thirteenth Judicial District was designated to hear the case. We refer to his proceed-

ings and decision as "the Pope case.") The City was permitted to intervene in that action, and on May 20, 1999, during an evidentiary hearing on the County's petition, the City moved orally to dismiss the petition on the grounds that the County was not authorized to construct a water and sewer system. The City based its argument, in part, on a factual dispute over whether the County's net taxable value was sufficient to classify it as a Class A county, authorized under NMSA 1978, § 4–36–10(A) (1996), to construct water and sewer systems, and on its contention that the County was not building the system to benefit current residents.

{3} On October 13, 1999, before the court in the Pope case ruled on the County's petition, the County passed a revenue bond ordinance, Doña Ana County, N.M. Ordinance 185–99 (Oct. 13, 1999), which authorized the issuance of $6,000,000 in water system revenue bonds. On November 12, the City filed an application for a preliminary injunction in the Pope case arguing that the County lacked authority to construct a water and sewer system, and that the ordinance authorizing the sale of revenue bonds was unlawful because it violated Section 57–1–3(A) of the Antitrust Act, and N.M. Const. art. IV, § 20 because it contained a clause prohibiting the licensing of any competing system within the County.

{4} On November 29, 1999, the County moved to dismiss the application in the Pope case on several grounds, including that (1) the application constituted a collateral attack on the ordinance, (2) the attack was not ripe, (3) the clause the City objected to could be severed, (4) the County was immune from antitrust laws, and (5) the City lacked standing. In its motion, the County pointed out that the City had also filed an application for injunctive and declaratory relief in a new lawsuit assigned to a different judge (the case before us on appeal) and argued that if the court did not dismiss on any of the grounds argued, it should defer to the other judge.

{5} Shortly afterwards, the court entered findings and conclusions in the Pope case, including findings that the County was a Class A county with authority to construct the system to provide service to County inhabitants, which the court found was a public use. On December 20, 1999, after the time for the City to respond to the County's motion to dismiss its application for a preliminary injunction had expired, the court in the Pope case entered an order denying the City's application. On October 17, 2000, Judge Pope entered a final judgment of condemnation. That judgment has not been appealed.

{6} As the County informed Judge Pope on November 15, 1999, the City filed a petition for injunctive and declaratory relief in a *separate* lawsuit. This is the case currently before this Court on appeal. In its petition, the City sought three specific forms of relief: (1) a preliminary and permanent injunction pursuant to Rule 1–066 NMRA 2003; (2) an injunction pursuant to the Antitrust Act; and (3) a judgment declaring that the County was not authorized to establish or operate a water and sewer utility, or authorized to finance the project under a revenue bond ordinance, and that the revenue bond ordinance was void under the Antitrust Act. The City's allegations in this separate action were in substance essentially identical to those it made in the Pope case.

{7} The County moved to dismiss, arguing that it was fully authorized to issue revenue bonds and operate a water and sewer system. The County also argued that its authority to establish and operate a sewer utility to serve industrial and business uses had been fully litigated in the Pope case. The County also argued that it was immune under the state action doctrine from the City's antitrust claims, and that those claims were not ripe for review. The district court dismissed the City's petition. The transcript of the hearing on the County's motion clarifies that the court based its decision on the doctrines of collateral estoppel and ripeness. *See Ledbetter v. Webb,* 103 N.M. 597, 604, 711 P.2d 874, 881 (1985) (stating that trial court's verbal comments can be used to clarify a finding, but not to reverse a finding). This appeal followed.

## DISCUSSION

{8} Because the City concedes in its brief in chief that the issues of whether the County had the authority to issue bonds and to operate the water and sewer utility are now moot, we address the following two main issues on appeal: (1) whether the City was collaterally estopped from arguing that a clause in the County's revenue bond ordinance violated the Antitrust Act, and (2) whether this issue was ripe for review. The County urges us to affirm on the following additional grounds: (1) the County argues it is immune from antitrust actions under the state action immunity doctrine, (2) the City's petition was barred by res judicata, and (3) the challenged clause in the bond ordinance can be severed.

{9} We review the granting of the motion to dismiss de novo. *Padwa v. Hadley,* 1999–NMCA–067, ¶ 8, 127 N.M. 416, 981 P.2d 1234. For purposes of a motion to dismiss, we accept all well-pleaded facts as true and consider whether the plaintiff might prevail under any state of facts provable under the claim. *N.M. Life Ins. Guar. Ass'n v. Quinn & Co.,* 111 N.M. 750, 753, 809 P.2d 1278, 1281 (1991). A complaint should not be dismissed unless there is a total failure to allege some matter essential to the relief sought. *Las Luminarias of the N.M. Council of the Blind v. Isengard,* 92 N.M. 297, 300, 587 P.2d 444, 447 (Ct.App.1978).

### Collateral Estoppel

{10} The City argues that the district court should not have dismissed its petition on collateral estoppel grounds because the issue of the legality of the revenue bond ordinance was not previously litigated. The application of collateral estoppel generally requires that (1) the parties in the current action were the same or in privity with the parties in the prior action, (2) the subject matter of the two actions is different, (3) the ultimate fact or issue was actually litigated, and (4) the issue was necessarily determined. *Reeves v. Wimberly,* 107 N.M. 231, 233, 755 P.2d 75, 77 (Ct.App.1988).

{11} The issue of collateral estoppel is complicated by the fact that in the Pope case,

the City raised two separate challenges to the County's ability to operate and fund a water and sewer utility. The first challenge, made in an oral motion, questioned whether the County's net taxable value was sufficient to grant it the necessary Class A status to operate a water and sewer utility under Section 4–36–10. The court in the Pope case, however, specifically found that the County was a Class A county. The City concedes that this issue—which appears to have been litigated and decided in the Pope case, and which was reargued below in the current action—is now moot.

{12} The second challenge was brought in the City's application for a preliminary injunction. This challenge raised the issue of whether the competing system clause in the County's revenue bond ordinance violated the Antitrust Act. The County passed its revenue bond ordinance on October 13, 1999. The City argues that the validity of the bond ordinance of necessity could not have been litigated at the evidentiary hearing on the condemnation petition since it occurred on May 20, 1999, five months before the ordinance was adopted.

{13} The County acknowledges in its answer brief that the district court's reliance on collateral estoppel was based on the findings and conclusions resulting from the evidentiary hearing in the Pope case. The County suggests that the district court relied on the findings and conclusions in the Pope case to decide that "except for the City's anti-trust argument, the County's bond ordinance was legal upon the ground that all the City's other claims had been resolved against them." Thus the County appears to concede that the issue whether the competing systems clause violated the Antitrust Act was not determined in the Pope case. However, the County then argues very briefly that because the City raised the same facts and issues before both courts—first in the application for a preliminary injunction in the Pope case and then in the current action—all aspects of the legality of the ordinance were necessarily decided for collateral estoppel purposes by the court in the Pope case when it denied the City's application.

{14} It is true that, "[a]s a general rule, when a question of fact is put in issue by the pleadings, is submitted to the trier of fact for its determination, and is determined, that question of fact has been 'actually litigated.'" 18 James Wm. Moore et al., Moore's Federal Practice, § 132.03[2][c] (3d ed.1997). In addition to the requirement that an issue be litigated, however, the issue raised in the earlier proceeding must have been decided. *See Silva v. State,* 106 N.M. 472, 474, 745 P.2d 380, 382 (1987) ("Collateral estoppel bars relitigation of ultimate facts or issues actually and necessarily decided in a prior suit."). It follows that "[w]hen a court cannot ascertain what was litigated and decided, issue preclusion cannot operate." 18 Moore's Federal Practice, § 132.03[2][g] (citing *Mitchell v. Humana Hosp.-Shoals,* 942 F.2d 1581, 1583–84 (11th Cir.1991) (stating that the state court did not enter findings or specify the reasons for its decision, and the federal court could not be certain whether the issue in question was actually decided in the prior action)).

{15} The County set forth several grounds for dismissal of the application in the Pope case: (1) the issue was not ripe, (2) the application was defective because it constituted a collateral attack on the ordinance, (3) the City lacked standing because it was not a party to the condemnation, (4) the court should defer to the court resolving the action currently before this Court, (5) the County was immune from antitrust laws, and (6) the clause could be severed. The order in the Pope case simply denied the application in all respects without specifying the basis for the ruling. It is unclear, therefore, whether the antitrust issue was actually decided. In cases like this, when "the basis of a decision is unclear, and it is therefore uncertain whether the issue was actually and necessarily decided in that litigation, then relitigation of the issue is not precluded." 18 Moore's Federal Practice, § 132.03[3][d] (citing *Fay v. South Colonie Cent. Sch. Dist.,* 802 F.2d 21, 30 (2d Cir.1986) (stating that a memorandum decision was so vague as to render impossible a conclusion that a dismissal had resolved issues raised by plaintiff) *overruled on other grounds by Taylor v.*

*Vermont Dep't of Educ.,* 313 F.3d 768, 783 (2d Cir.2002)).

{16} Because the court in the Pope case made no findings on the issue of the legality of the revenue bond ordinance and did not specify the grounds on which it had denied the City's application, we cannot say that the issue was actually and necessarily decided in the prior case. We therefore hold that the City was not collaterally estopped from raising the Antitrust Act issue below.

## Res Judicata

{17} Although the district court did not dismiss the City's petition on res judicata grounds, the County argues that the district court could have done so, apparently urging us to affirm the district court's dismissal as right for the wrong reason. *See Meiboom v. Watson,* 2000–NMSC–004, ¶ 20, 128 N.M. 536, 994 P.2d 1154 (stating that an appellate court "may affirm a district court ruling on a ground not relied upon by the district court, [but] will not do so if reliance on the new ground would be unfair to appellant") (internal quotation marks and citation omitted).

{18} The doctrine of res judicata applies when the second suit has the following relationship with the first suit: (1) The parties must be the same, (2) the cause of action must be the same, (3) there must have been a final decision in the first suit, and (4) the first decision must have been on the merits. *Bennett v. Kisluk,* 112 N.M. 221, 225, 814 P.2d 89, 93 (1991) (Franchini, J., dissenting). Res judicata bars not only claims that were raised in the prior proceeding, but also claims that could have been raised. *State ex rel. Martinez v. Kerr–McGee Corp.,* 120 N.M. 118, 121, 898 P.2d 1256, 1259 (Ct.App.1995).

{19} The cause of action in the Pope case, and upon which judgment was entered, was the County's petition for condemnation of a well, in the midst of which the City filed an application for an injunction. The cause of action in the second lawsuit was the City's petition for injunctive relief. Under the transactional test adopted by our Supreme Court in *Three Rivers Land Co. v. Maddoux,* 98 N.M. 690, 695, 652 P.2d 240, 245 (1982)

(*overruled on other grounds by Universal Life Church v. Coxon*, 105 N.M. 57, 59, 728 P.2d 467, 469 (1986)), to determine whether a later claim is precluded, we must "examine the operative facts underlying the claims made in the two lawsuits." *Anaya v. City of Albuquerque*, 1996–NMCA–092, ¶ 8, 122 N.M. 326, 924 P.2d 735. In this case, the operative facts underlying the petition for condemnation and the petition for injunctive relief are different.

{20} The County argues on appeal, however, without reference to cited authority, that the application for a preliminary injunction and its denial, filed within the condemnation action, should be considered a separate cause of action and final order, thus triggering the application of res judicata to the petition for injunctive and declaratory relief in the current case. The County made the same argument below. Because the County has cited us no authority to persuade us that res judicata applies to these circumstances, we are not inclined to consider this argument. *See ITT Educ. Servs., Inc. v. Taxation & Revenue Dep't*, 1998–NMCA–078, ¶ 10, 125 N.M. 244, 959 P.2d 969 (stating that this Court will not consider propositions in briefs that are unsupported by citation to authority).

{21} In any event, we would not be persuaded that res judicata applies in this case. In order for the doctrine of res judicata to apply, not only must the claimant have had a full and fair opportunity to litigate the claim in the original action, but there must also have been a final decision on the merits. *Wolford v. Lasater*, 1999–NMCA–024, ¶ 5, 126 N.M. 614, 973 P.2d 866. The County argues on appeal that the City had the opportunity to litigate the merits of the issue of the legality of the revenue bond ordinance in the Pope case. However, the County argued below that it was not arguing the merits of the issues but simply seeking dismissal for failure to state a claim. And, as an alternative, the County urged the court in the Pope case to defer to the district court in this case. Given these circumstances we do not believe it would be appropriate to rely on res judicata to affirm.

**Ripeness**

{22} The City argues that the trial court erred when it dismissed its petition on the ground that the City's alleged injury was not ripe for review. The City alleged below that the following clause in the County's revenue bond ordinance was void because it violated the Antitrust Act:

> *Competing System.* The County shall not grant any franchise or license to a competing system, or permit any person or organization to sell water service within the County (unless required to do so by law). To the extent permitted by law, the County will require all residents to connect to the water facilities.

Ordinance 185–99, § 21(I). The City sought a declaratory judgment that the ordinance violated the Antitrust Act. The County argued successfully to the district court that the competing system clause in the revenue bond ordinance was not invalid on its face and that the City's issue would not be ripe until the County took some action to enforce the clause.

{23} The ripeness doctrine exists " 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.' " *US West Communications, Inc. v. N.M. State Corp. Comm'n*, 1998–NMSC–032, ¶ 8, 125 N.M. 798, 965 P.2d 917 (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967) (*abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 105, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977))). In addition, *Abbott Laboratories* explains that an issue may be ripe where the threat of harm must be "sufficiently direct and immediate as to render the issue appropriate for judicial review at this stage." *Abbott Labs.*, 387 U.S. at 152, 87 S.Ct. 1507.

{24} The County argues that the ordinance does not meet this test because it speaks to future events and is not "couched in strict mandatory form." The City argues, however, that under Section 57–1–3(A) of the Antitrust Act, "any person threatened with injury or injured in his business or property, directly or indirectly, by a violation of Section 57–1–1 or 57–1–2 NMSA 1978 may bring

an action for appropriate injunctive relief." Section 57–1–1.2 includes "any governmental or other legal entity with the exception of the state" within its definition of a person, and Section 57–1–2 declares that it is "unlawful for any person to monopolize or attempt to monopolize ... trade or commerce, any part of which trade or commerce is within this state." Thus, the Antitrust Act permits a cause of action to enjoin a direct or indirect threat.

{25} In construing an ordinance, "we must employ the same rules of construction that we use when construing statutes." *Acosta v. City of Santa Fe,* 2000–NMCA–092, ¶ 17, 129 N.M. 632, 11 P.3d 596 (citing *Continental Oil Co. v. City of Santa Fe,* 25 N.M. 94, 101, 177 P. 742, 745 (1918)). "Matters of statutory construction and interpretation are reviewed de novo." *State v. Pearson,* 2000–NMCA–102, ¶ 5, 129 N.M. 762, 13 P.3d 980. The first rule of statutory construction is that "[t]he plain language of a statute is the primary indicator of legislative intent." *Gen. Motors Acceptance Corp. v. Anaya,* 103 N.M. 72, 76, 703 P.2d 169, 173 (1985). Moreover, we will not read a statute to achieve an absurd construction. *See Pearson,* 2000–NMCA–102, ¶ 5, 129 N.M. 762, 13 P.3d 980. In our view, the competing system clause within the ordinance demonstrates on its face an attempt to monopolize the sale of water services within Doña Ana County by prohibiting the licensing of competitors and by requiring all residents to connect to the County's system, regardless of the disclaimers with regard to legality.

{26} Because the trial court dismissed the City's petition pursuant to Rule 1–012(B)(6), the trial court was required to determine only whether the facts alleged in the petition stated a claim for relief. *See Blea v. City of Espanola,* 117 N.M. 217, 218, 870 P.2d 755, 756 (Ct.App.1994). The City alleged in the petition that it would be harmed as a utility operator by the County's attempt to monopolize operations, which the City alleged was an attempt to destroy the City's utility along with other private and municipal utilities in Doña Ana County. This allegation was legally sufficient to state a claim for injunctive relief under the Antitrust Act.

**State Action Immunity**

{27} The County also argued below, and now on appeal, that regardless whether the ordinance violated the Antitrust Act, the County was immune from antitrust laws under the state action immunity doctrine. The City and the County both agree that the district court did not rely on this doctrine to dismiss the petition. The County, however, argues that the district court could have done so. *See Meiboom,* 2000–NMSC–004, ¶ 20, 128 N.M. 536, 994 P.2d 1154 (stating that an appellate court "may affirm a district court ruling on a ground not relied upon by the district court, [but] will not do so if reliance on the new ground would be unfair to appellant") (internal quotation marks and citation omitted).

{28} The state action immunity doctrine is a federal doctrine providing immunity to state actors from the Sherman Antitrust Act, 15 U.S.C. §§ 1–7 (1994 & Supp. V 1999), and was first articulated in *Parker v. Brown,* 317 U.S. 341, 350, 63 S.Ct. 307, 87 L.Ed. 315 (1943). Under this doctrine, the acts of municipalities and other subordinate governmental entities are immune only if undertaken pursuant to a clearly articulated state policy. *Town of Hallie v. City of Eau Claire,* 471 U.S. 34, 45–46, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985) (*superseded by statute as stated in Sakamoto v. Duty Free Shoppers, Ltd.,* 764 F.2d 1285, 1288 (9th Cir.1985)). In *Parker,* the United States Supreme Court stated that although it assumed, without deciding, "that Congress could, in the exercise of its commerce power," have made the Sherman Act applicable to states, it had only made the Sherman Act applicable to persons, including corporations, and gave "no hint that it was intended to restrain state action or official action directed by a state." *Parker,* 317 U.S. at 350–51, 63 S.Ct. 307.

{29} It is clear, therefore, that the rationale underlying the state action immunity doctrine does not apply to causes of action brought pursuant to the New Mexico Antitrust Act, which does not implicate the relationship between federal and state governments. In addition, as we have already

stated, Sections 57–1–1.2 and 57–1–2 of our Antitrust Act do not immunize counties but, instead, make it unlawful for "any governmental or other legal entity with the exception of the state" to "monopolize or attempt to monopolize, ... trade or commerce, any part of which trade or commerce is within this state." We therefore determine that the state action immunity doctrine is inapplicable in this case.

### Severability Clause

{30} The County argues that if we reach and decide the antitrust issue against it, the competing systems clause can be severed from the rest of the ordinance. We have already held, in the context of the ripeness issue, that the clause on its face demonstrates an improper attempt to monopolize the sale of water services in the County. It follows that this improper purpose constitutes a violation of the Antitrust Act.

{31} As the County points out, the ordinance contained a severability clause, which reads as follows:

*Severability Clause.* If any section, paragraph, clause or provision of this Bond Ordinance shall for any reason be held to be invalid or unenforceable, the invalidity or unenforceability of such section, paragraph, clause or provision shall not affect any of the remaining provisions of this Bond Ordinance.

Ordinance 185–99, § 33. The County relies on *Chapman v. Luna,* 101 N.M. 59, 65, 678 P.2d 687, 693 (1984), to argue that if an ordinance contains a severability clause and part of the ordinance is found to be void or unenforceable, that clause may be severed, leaving the rest of the ordinance in place. In *Chapman,* our Supreme Court explained that "a severability clause raises a presumption that the legislating body would have enacted the rest of the ordinance without the void section." *Id.* (citing *Barber's Super Markets, Inc. v. City of Grants,* 80 N.M. 533, 536, 458 P.2d 785, 788 (1969)). When, as here, a severability clause makes clear that the ordinance would have been enacted without the invalid provision, the clause can be severed without invalidating the entire ordinance. *Id.*

{32} Accordingly, on remand, the district court shall sever the competing systems clause without invalidating the rest of the ordinance.

### CONCLUSION

{33} For the reasons set forth above, we hold that the issue of whether the City was threatened with harm by the competing system clause in the County's revenue bond ordinance was not barred by collateral estoppel or res judicata and was ripe for judicial review. We therefore reverse the dismissal of the City's petition for injunctive and declaratory relief and remand for the district court (1) to vacate its order dismissing the petition, and (2) to sever the competing system clause, § 21(I), from Ordinance 185–99.

{34} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID and CYNTHIA A. FRY, Judges.